**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-02535-RPM-BNB

CANAL UNO TV – RELAD, S.A., an Ecuadorian Corporation

      Plaintiff,

v.

DISH NETWORK, LLC, a Colorado Limited Liability  Company;
DISH NETWORK CORPORATION, a Nevada Corporation;
MEDIA WORLD, LLC, a Florida Limited Liability Company;
TELEAMAZONAS INTERNATIONAL, LLC, a Florida Limited Liability Company, and
ROGER HUGUET, an individual.

      Defendants.

---

### CANAL UNO'S FIRST AMENDED CIVIL COMPLAINT AND JURY DEMAND

---

COME NOW, Canal Uno TV – Relad, S.A., by its counsel, LATHROP & GAGE, LLP, with its First Amended Complaint and Jury Demand against Defendants DISH Network, LLC, f/k/a Echostar Satellite, LLC  and Dish Network Corporation (collectively, "DISH"), Media World, LLC ("Media World"), Teleamazonas International, LLC ("Teleamazonas"), and Roger Huguet ("Huguet") and states as follows:

## I.    INTRODUCTION

1.    Canal Uno TV, Relad, S.A. ("Canal Uno") seeks monetary, declaratory and injunctive relief against DISH for breach of contract, fraud, and civil conspiracy.  Canal Uno has suffered damages in excess of $7,000,000 as a result of DISH's improper scheme and plan to defraud Canal Uno by falsely securing valuable programming services, threatening a

**EXHIBIT A**

frivolous suit in order to justify withholding substantial contractual licensing fees, and improperly canceling the final two years of an Affiliation Agreement in favor of a more lucrative deal with Teleamazonas, a competing programming provider. Canal Uno will also seek exemplary damages, contractual attorney fees, costs, expenses, prejudgment interest, post-judgment interest and other relief as the Court deems fair and just.

2.      In addition, Canal Uno brings claims for civil conspiracy and tortious interference with contract against Media World, Teleamazonas, and Huguet for improperly interfering with Canal Uno's Affiliation Agreement with DISH, as well as claims for breach of fiduciary duty against Media World and Huguet for their self dealing and breach of their duty of loyalty to Canal Uno.

## II.    THE PARTIES

3.      Canal Uno TV, Relad, S.A. is a broadcasting company located in Ecuador with its principle place of business located at Ave Francisco De Orellana, 112 and Ave Del Bosque.

4.      DISH Network LLC is a Colorado Limited Liability Company with its principle address at 9601 South Meridian Boulevard, CO 80112.

5.      DISH Network, LLC was formerly known as Echostar Satellite, LLC.   On February 29, 2008, Echostar Satellite, LLC formally changed its name to DISH Network, LLC.

6.      DISH Network Corporation has its principle business address at 9601 South Meridian Boulevard, Englewood, Colorado 80112.   DISH Network LLC is wholly owned by DISH Network Corporation.   Unless otherwise stated, these Defendants will collectively be referred to as "DISH."

2

7.      Media World is a Florida Limited Liability Company with its principal place of business at 7395 West 19th Court, Hialeah, Florida 33014.

8.      Teleamazonas is a Florida Limited Liability Company with its principal place of business at 7395 West 19th Court, Hialeah, Florida 33014.

9.      Huguet is an individual residing, on information and belief, in Florida.

10.     Huguet is a principal of both Media World and Teleamazonas.

## III.   VENUE AND JURISDICTION

11.     This Court has subject matter jurisdiction over this action because there is complete diversity between the Plaintiff and the Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

12.     This Court has personal jurisdiction over DISH because, among other reasons, DISH is a Colorado limited liability company, with its principal place of business in Colorado and it has consented to jurisdiction of this Court in Section 10.8 of the Affiliation Agreement.

13.     This Court has personal jurisdiction over Media World, Teleamazonas, and Huguet because all of these parties have conducted substantial business in Colorado.

14.     Venue is appropriate.

## IV.   MEDIA WORLD'S AND HUGUET'S RELATIONSHIP WITH CANAL UNO

15.     The genesis of Canal Uno's relationship with DISH is through Hueget.  Hueget is the President and Chief Executive of Media World.

16.     In early 2005, Canal Uno's President and Chief Executive, Marcel Rivas, met with Hueget and DISH representative Ken Tolles at Media World's offices in Florida to discuss

Canal Uno's possible placement on the DISHLatino programming package, a programming lineup that is specifically aimed at the large Spanish-speaking community in the United States.

17.     There was at least one follow-up meeting between Hueget, Rivas, and Tolles at Media World's offices in Florida regarding Canal Uno's possible inclusion in the DISHLatino package.

18.     To further the negotiations of terms on which Canal Uno would be included in the DISHLatino package, Canal Uno and Media World entered into an Agreement dated July 7, 2005, in which Media World agreed that it would exclusively represent Canal Uno in the negotiation of the Affiliation Agreement between DISH and Canal Uno.

19.     Huguet handled all the negotiations of the Affiliation Agreement with DISH and the head of the DISHLatino programming package, Ruben Mendiola.

20.     Under the Media World Agreement, Canal Uno agreed to pay Media World ten percent of the monthly license fee billed to DISH for the duration of the Affiliation Agreement.

21.     In addition, Media World agreed to represent Canal Uno in selling advertising or infomercials.  In exchange, Canal Uno agreed to pay Media World fifteen percent of the monthly billing for direct response or infomercial sales and fifteen percent of any general advertising sales.

22.     Media World, through Huguet, was Canal Uno's representative through all the negotiations leading up to the execution of the Affiliation Agreement between Canal Uno and DISH.

DNVRDOCS 18802v2

23.     Media World, through Huguet, continued to act as Canal Uno's agent after execution of the Affiliation Agreement, including representing Canal Uno in all matters relating to Canal Uno's performance of its obligations under the Affiliation Agreement.

## V.     THE AFFILATION AGREEMENT BETWEEN CANAL UNO AND DISH

24.     As a result of the negotiations between Huguet, Media World, Canal Uno, and DISH, on or about October 7th, 2005, Canal Uno and DISH entered into the Affiliation Agreement.

25.     DISH drafted the terms, conditions, and language of the Affiliation Agreement.

26.     DISH presented the Affiliation Agreement to Canal Uno on a "take it or leave it" basis.

27.     Canal Uno did not have sufficient bargaining power to induce DISH to negotiate, bargain, and/or vary any of the material terms imposed by DISH.

28.     Canal Uno was not represented by counsel with respect to its entry into the Affiliation Agreement.   Instead, Canal Uno was represented exclusively by Media World through its President, Huguet.  Canal Uno's President, Marcel Rivas, did not have legal training and English is his second language. Mr. Rivas executed the Agreement on or about October 7, 2005 in substantially the form in which DISH originally sent it to Canal Uno.

29.     The Affiliation Agreement grants DISH the right to transmit Canal Uno's programming service to DISH service subscribers in exchange for a fee.

DNVRDOCS 18802v2

30.     The Affiliation Agreement obligates DISH to make License Fee payments "within sixty days from the last calendar month during which a reporting period ends."  The "reporting period" is defined in the Affiliation Agreement as ending on the 21st day of the month.

31.     The Licensing Fee is calculated by multiplying the number of service subscribers in the reporting period by the License Fee set forth in the Fee Schedule attached as Exhibit B to the Affiliation Agreement.

32.     The License Fee schedule called for 13 cents per service subscriber, per month, after the third anniversary and 13.5 cents per service subscriber, per month, after the fourth anniversary of the Affiliation Agreement.

33.     Section 4.01 of the Affiliation Agreement requires that DISH report to Canal Uno the total number of Service Subscribers on the last day of the prior and current reporting periods within 45 days after the end of a calendar month.

34.     The Affiliation Agreement states that upon 30 days written notification of one or more of the events outlined in the agreement, a party may terminate the Agreement.

35.     The termination rights under the Affiliation Agreement were made expressly "subject to Section 9.03" of the Affiliation Agreement.

36.     Section 9.03 of the Affiliation Agreement requires that "the notified party shall have up to a maximum of thirty (30) days, if needed, from the receipt of such notice to cure the breach or default or if such cure is capable of cure but cannot be reasonably completed in such period, and the defaulting party has commenced and is diligently pursuing such cure, then for such longer period necessary to complete such cure, but in no event to exceed (90) days in total. If such breach or default is timely cured, the notice of termination shall be null and void."

6

37.     Notice of an alleged breach must be in writing provided to the other party 30 days prior to termination.

38.     The Affiliation Agreement does not provide DISH with the contractual right to withhold an entire License Fee owed for a reporting period.

39.     The Affiliation Agreement does not provide DISH with the contractual right to recover portions of License Fees paid by withholding License Fees owed.

40.     The Affiliation Agreement does not expressly or implicitly provide DISH with the contractual right to claim a reduction in a License Fee when DISH failed to provide notice of the alleged breach nor an opportunity to cure the alleged breach.

41.     Section 10.13 states that the prevailing party in any suit or action to enforce or interpret the Affiliation Agreement "shall be entitled to recover its costs, expenses and reasonable attorney fees, both at trial and on appeal, in addition to all other sums allowed by law."

## VI.     CANAL UNO'S COMPLIANCE WITH THE AFFILATION AGREEMENT

42.     Canal Uno provided uninterrupted programming services to DISH, for the benefit of it and its subscribers, from the inception of the Affiliation Agreement through termination of that agreement by DISH on October 15, 2008.

43.     Approximately three million Ecuadorian nationals live in the United States. The programming service provided by Canal Uno was uniquely Ecuadorian in content as it was produced in Ecuador for Ecuadorians. Canal Uno had established broadcasting relationships with the most popular Ecuadorian soccer teams and provided as many as five live soccer games a week during the season. Canal Uno also provided original live Ecuadorian programming.

7

Canal Uno had established a reputation as one of the premier South American and Ecuadorian broadcasting networks.  DISH utilized Canal Uno's programming, established relations with soccer teams and enthusiasts, Canal Uno's brand name recognition within the Ecuadorian population, and its reputation and goodwill within that population to capture significant market share.

44.    From inception of the Affiliation Agreement to termination, Canal Uno provided programming services as defined in the Affiliation Agreement.

45.    From the Affiliation Agreement's inception until January 21, 2008, DISH paid Canal Uno the License Fee required by the Affiliation Agreement.

46.    From the Affiliation Agreement's inception until April 17, 2008, DISH did not provide notice to Canal Uno of any potential, material breach of the Affiliation Agreement.

47.    DISH waived all alleged breaches of the Affiliation Agreement by failure to provide notice to Canal Uno and an opportunity to cure.

48.    DISH waived the right to withhold a License Fee on the basis of an alleged product guarantee breach as DISH failed to provide timely notice of any such breach and did not provide an opportunity for cure.

49.    DISH has not paid a License Fee to Canal Uno for Programming Services provided after January 21, 2008.

50.    DISH terminated the Affiliation Agreement on October 15, 2008.

51.    No notice was provided prior to the termination on October 15, 2008.

52.    From January 22, 2008 through October 15, 2008, DISH received programming services from Canal Uno for the benefit of DISH and its service subscribers.

53. From January 22, 2008 through October 15, 2008, DISH did not pay Canal Uno a License Fee for the Programming Service received from Canal Uno.

54. From January 22, 2008 through October 15, 2008, DISH maintained "service subscribers" requiring that a License Fee be paid as defined in Article 3 of the Affiliation Agreement.

55. During the following reporting periods, DISH had the following service subscribers resulting in the following License Fee calculation:

| | Service Subscribers | License Fee calculation |
|---|---|---|
| 1/22/2008 – 2/21/2008 | Unknown | Unknown |
| 2/22/2008 – 3/21/2008 | 1,450,501 | $188,565.13 |
| 3/22/2008 – 4/21/2008 | 1,448,111 | $188,254.43 |
| 4/22/2008 – 5/21/2008 | 1,441,275.5 | $187,365.81 |
| 5/22/2008 – 6/21/2008 | 1,431,950 | $186,153.50 |
| 6/22/2008 – 7/21/2008 | 1,425,733 | $185,345.29 |
| 7/22/2008 – 8/21/2008 | 1,397,437 | $181,666.81 |
| 8/22/2008 – 9/21/2008 | 1,368,689 | $177,929.57 |
| 9/22/2008 – 10/21/2008 | Unknown | Unknown |

56. DISH owes Canal Uno $1,295,280.40 in License Fees for the Programming Service provided from February 22, 2008 through September 21, 2008.

57. DISH has failed to disclose the service subscriber numbers for the reporting periods ending on February 21, 2008 and October 21, 2008. This was a breach of Section 4.01 of the Affiliation Agreement.

58. DISH owes a License Fee for the reporting periods ending on February 21, 2008 and October 21, 2008 of approximately $366,500. The precise service subscriber numbers for these reporting periods will reveal the precise amount of the License Fee for those periods.

## VII.   TERMINATION OF THE AFFILIATION AGREEMENT

59.     In early 2008, Huguet approached Canal Uno about purchasing a 50% interest in Canal Uno.

60.     Canal Uno rejected Huguet's offer.

61.     Soon thereafter, on April 17, 2008, DISH sent a letter to Canal Uno claiming that Canal Uno has breached the Affiliation Agreement in 2007, allowing DISH to recover 50% of the License Fee paid to Canal Uno in 2007 or $1,153,279.76.

62.     Despite subsequent requests from Canal Uno, DISH has not provided evidence establishing an uncured or unwaived product guarantee breach that would warrant liquidated damages in the amount of $1,153,279.76 or more.

63.     DISH's April 17, 2008 letter to Canal Uno represents the only notification of an alleged breach of the Affiliation Agreement.  This letter was untimely pursuant to Section 9.00 of the Affiliation Agreement.

64.     On information and belief, DISH's April 17, 2008 letter was the start of Huguet's and DISH's transparent plan to terminate the Affiliation Agreement with Canal Uno in favor of a new agreement with a more favorable License Fee and with a broadcaster that was owned by Huguet.  TeleAmazonas and Media World were privy to the plan.

65.     Within 30 days of DISH's April 17, 2008 letter, Canal Uno cured and/or addressed the alleged product guarantee breaches.  At no time did Canal Uno fail to provide programming it guaranteed under the Affiliation Agreement.

66.     DISH did not terminate the Affiliation Agreement in May, June, July, August or September of 2008.

67.     On May 16, 2008, Canal Uno certified its compliance with the Affiliation Agreement.  By notifying DISH of this compliance, DISH did not have the contractual right to withhold fees or to terminate the Agreement absent the occurrence of a new breach followed by notice from DISH.

68.     On June 30, 2008, Canal Uno sent notification to DISH of its failure to pay the required License Fee.  Canal Uno provided DISH 30 days to cure this non-payment of over $400,000 in License Fees.

69.     On July 8, 2008, DISH demanded that Canal Uno continue to provide the programming service.   DISH threatened legal action if Canal Uno stopped providing Programming Services to DISH for the benefit of its subscribers.

70.     In order to avoid a suit and under the impression that DISH would pay License Fees going forward, Canal Uno continued to provide programming services to DISH following the July 8, 2008 correspondence from DISH.

71.     Unbeknownst to Canal Uno, while it continued to provide DISH with programming services from May through October, DISH was negotiating an Affiliation Agreement with TeleAmazonas, a competing broadcasting company in Ecuador, with the intent to terminate the Affiliation Agreement with Canal Uno.

72.     TeleAmazonas is owned in part by Huguet.

73.     At the time of the switch, TeleAmazonas did not have the ability to provide the programming service that Canal Uno provided to DISH and its subscribers under the terms of the Affiliation Agreement.

74.    On information and belief, Huguet and TeleAmazonas encouraged DISH to terminate the Affiliation Agreement with Canal Uno by providing false and misleading information about Canal Uno's performance of its obligations under the Affiliation Agreement to DISH.

75.    On October 1, 2008, DISH Network Corporation issued a press release indicating that TeleAmazonas would be added to its DishLATINO platform.

76.    On October 15, 2008, DISH Network Corporation issued a press release announcing that "Ecuadorian soccer channel TeleAmazonas has replaced Canal Uno, which is no longer available in the United States."

77.    Both Huguet and DISH knew at the time of this October 15, 2008 press release that the only reason Canal Uno was no longer available in the United States was because DISH was improperly terminating the Affiliation Agreement.

78.    Under Article 2 of the Affiliation Agreement, the Agreement was scheduled to terminate on the 5th anniversary of the Agreement, or October 7, 2010.

79.    When DISH terminated the Affiliation Agreement on October 15, 2008, two years remained under the Affiliation Agreement.

80.    Had DISH honored the Affiliation Agreement through its natural termination, DISH would have owed Canal Uno an additional $4.6 million in License Fees, or more.

81.    DISH broadcast TeleAmazonas on the same channel previously reserved for Canal Uno.

82.    DISH did not provide Canal Uno with advance notice of termination.  As a result, Canal Uno was provided no opportunity to educate its viewers on the termination.

12

83.     Huguet, Media World, and TeleAmazonas took direct and intentional steps designed to cause DISH to terminate the Affiliation Agreement.  As a result of the immediate and unfounded termination of the Affiliation Agreement, DISH misappropriated and spoiled Canal Uno's goodwill and reputation among soccer enthusiasts, soccer teams, advertisers, its viewers and transferred that goodwill and reputation to DISH and its new provider, without compensation.

84.     Due to Huguet's, Media World's, and TeleAmazonas's interference with Canal Uno's contractual relationship with DISH, Canal Uno has lost substantial revenue, substantial income potential, and other provable economic losses associated with losing its soccer contracts, advertisers, and other revenue.

85.     Due to the termination by DISH, Canal Uno will be wrongfully deprived of License Fees for the two years remaining under the Affiliation Agreement.

## VIII.   CLAIMS FOR RELIEF

<u>**FIRST CLAIM FOR RELIEF**</u>
**BREACH OF CONTRACT**
**(Against DISH)**

86.     Canal Uno incorporates by reference the allegations set forth in paragraphs 1-85 as if fully set forth below.

87.     The Affiliation Agreement is a valid, enforceable and binding contract upon DISH.

88.     DISH breached the Affiliation Agreement by:

    i. failing to pay a License Fee from January 22, 2008 through termination of the agreement;

13

ii. failing to provide Canal Uno with notice and an opportunity to cure any alleged product guarantee breaches that occurred prior to the April 17, 2008 letter;

iii. applying a 50% discount to License Fees paid in 2007 when the programming services for 2007 were received without objection or notice that the programming services breached the Affiliation Agreement;

iv. Offsetting the claimed 50% discount by refusing to pay a License Fee for programming services received by DISH from January 22, 2008 through improper termination;

v. unilaterally terminating the Affiliation Agreement on October 15, 2008;

vi. failing to accept the May 16, 2008 letter as notice of compliance and cure as provided for under Section 9.03 of the Affiliation Agreement.

vii. failing to provide any notice of termination prior to October 15, 2008, when Canal Uno's signal was termination and TeleAmazonas signal began;

viii. failing to provide Canal Uno with a meaningful opportunity to cure any alleged breach before imposing penalties and termination; and

ix. failing to provide service subscriber numbers for all reporting periods including the periods ending February 21, 2008 and October 21, 2008.

14

89.     As a result of the breach of contract, Canal Uno has suffered the following damages:

    i.   $1,295,280.40, or more, in License Fees for the reporting periods ending in March, April, May, June, July, August and September of 2008.

    ii.  $366,500 or more, in License Fees for the reporting periods ending in February and October of 2008.

    iii. $4.6 million, or more, in License Fees associated with the remaining two years of the agreement (the precise amount to be determined by a jury and after a review of the service subscriber numbers for the remainder of the term of the Affiliation Agreement).

    iv.  Costs, expenses and reasonable attorney fees spent enforcing the Affiliation Agreement and collecting the unpaid fees.

    v.   Damage to reputation by unilaterally canceling the Affiliation Agreement and falsely stating in a press release that Canal Uno was replaced by TeleAmazonas because Canal Uno was no longer available in the United States;

    vi.  Misappropriation of goodwill by suddenly and intentionally canceling the Affiliation Agreement in favor of an agreement with TeleAmazonas, a broadcasting company that took over the channel previously occupied by Canal Uno; and

15

vii.  Exemplary damages associated with the intentional, pretextual  and
planned termination of the Affiliation Agreement  in advance of the
scheduled increase in License Fees and in favor of an Affiliation
Agreement with TeleAmazonas.  Upon information, DISH has
previously withheld substantial licensing fees as a pretext to ultimate
termination in favor of a new deal, with a new provider that is
financially advantageous to DISH.

### SECOND CLAIM FOR RELIEF
### DECLARATORY JUDGMENT
### (Against DISH)

90.     Canal Uno realleges and incorporates by reference the allegations contained in
Paragraphs 1-89 as if fully set forth herein.

91.     The Affiliation Agreement is a standardized agreement prepared by DISH.  DISH
obtained Canal Uno's agreement to this provision by taking advantage of Canal Uno's lack of
bargaining power and absence of any meaningful choice.

92.     Prior to signing the agreement, DISH did not advise Canal Uno that it could
retroactively apply Section 1.03(f), without notice or opportunity to cure, in order to "recoup"
License Fees paid in the past.

93.     DISH failed to disclose that it had previously applied Section 1.03(f) to other
vendors to withhold License Fees due and owing on the basis of an alleged product guarantee
beach when no notice nor an opportunity for cure was provided.

94.     DISH failed to disclose that it had previously interpreted Section 1.03(f) as allowing it to retroactively claim a product guarantee breach for which there was no notice nor an opportunity to cure as otherwise required by Section 9 of the Affiliation Agreement.

95.     Section 1.03(f) as applied by DISH is unconscionable and unenforceable as it acts as a penalty provision and fails to reasonably reflect the actual damages sustained by DISH, if any.

96.     If construed to permit DISH to withhold some or all of the License Fees due and owing to Canal Uno under the circumstances here, the provision would violate the reasonable expectations of Canal Uno.

97.     Section 1.03(f) is substantially unconscionable.  If construed to permit DISH to withhold all or some of the License Fees due to Canal Uno, the provision is not commercially reasonable because, among other things, Canal Uno's effort in providing its programming services and increasing DISH's goodwill would go uncompensated or undercompensated.

98.     Section 1.03(f) if construed to permit DISH to avoid its payment obligations under the Affiliation Agreement, would act as a penalty.  It does not represent a reasonable projection of what DISH's damages might be for the product guarantee breaches alleged in DISH's April 17, 2008 letter, assuming there is evidence to support those allegations.

99.     Section 1.03(f), if construed to permit DISH to avoid its payment obligations under the Affiliation Agreement, is also an unconscionable adhesion contract provision.

100.    Accordingly, Canal Uno requests this Court to issue a judgment declaring, among other things, that Section 1.03(f) of the Affiliation Agreement is unconscionable, unenforceable, is a penalty, and violates public policy.

DNVRDOCS 18802v2

101.    Finally, Canal Uno requests its costs, expenses and attorney fees and such further and additional relief as this court deems just and proper.

### THIRD CLAIM FOR RELIEF
**FRAUD**
**(Against DISH)**

102.    Canal Uno realleges and incorporates by reference the allegations contained in Paragraphs 1-101 as if fully set forth herein.

103.    On May 16, 2008, Canal Uno sent a notice of compliance and cure to DISH.  This letter established that Canal Uno was not in breach of the Affiliation Agreement.

104.    On June 30, 2008, Canal Uno's counsel sent notice to DISH of its continued non-payment of licensing fees for the reporting periods from January 22, 2008 through the date of the letter.  Canal Uno advised DISH that it would discontinue the programming services if the outstanding fees were not paid.  DISH was provided 30 days to cure this breach.

105.    On July 8, 2008, DISH sent a letter to Canal Uno's counsel.  DISH stated that "if your client proceeds with the course of action described in your June 30, 2008 letter, DISH will suffer economic and other harm."  DISH demanded that Canal Uno confirm its "ongoing performance under the Agreement within five (5) business days of the date of the letter."

106.    In the July 8, 2008 correspondence, DISH threatened Canal Uno, a vastly smaller company, with "enforcement of its rights and remedies in Court – which it is fully prepared to do."

107.    Through the July 8, 2008 letter, DISH intended for Canal Uno to believe that DISH would comply with the terms of the Affiliation Agreement going forward.

108.    Canal Uno reasonably believed that DISH would comply with the terms of the Affiliation Agreement.

109.    Through the July 8, 2008 letter, DISH intended for Canal Uno to exclusively provide programming service to DISH to the exclusion of other satellite or cable providers.

110.    At the time the July 8, 2008 letter, DISH, Huguet, Media World, and TeleAmazonas had already set in motion a scheme and plan to defraud Canal Uno of payments due and owing, while continuing to obtain Canal Uno's programming services without payment, followed by unilateral and pretextual termination of the Affiliation Agreement in favor of a new provider on terms more favorable to DISH.

111.    As part of this scheme, DISH used the July 8, 2008 letter to intentionally mislead Canal Uno as to its intentions toward: (a) payment of the outstanding License Fees; (b) payment of future licensing fees and (c) DISH's compliance with the Affiliation Agreement through its term.

112.    DISH fraudulently failed to disclose material facts, including (a) its intent to continue to withhold License Fees for the remainder of the Affiliation Agreement (b) its intent to receive programming services without payment; (c) its intent to cancel the Affiliation Agreement without notice or an opportunity to cure any alleged breach and (d) contemporaneous with its termination, its intent to turn the channel over to a new provider without giving Canal Uno an opportunity to communicate to its viewers, advertisers and business partners.

113.    Through this July 8, 2008 letter DISH obtained by fraud and deceit three additional months of programming services without payment of a License Fee or any compensation to Canal Uno.  Through this fraud and deceit, DISH continued to benefit from the

goodwill and reputation that Canal Uno built with advertisers, viewers, soccer teams, soccer enthusiasts and others.   Through fraud and deceit, DISH appropriated this goodwill and reputation and transferred it to the new provider, TeleAmazonas.

114.    DISH misled Canal Uno regarding its true intentions for the purpose of ensuring that DISH service subscribers received continuous programming services until DISH could complete its negotiation with a new provider on terms that were more favorable to DISH.

115.    DISH had a plan and scheme to keep Canal Uno exclusive to DISH while it negotiated a more favorable deal with TeleAmazonas.   DISH mislead the viewing public when it stated on October 15, 2008 that Canal Uno was being replaced because it was no longer available in the United States.

116.    At the time DISH made these misrepresentations and failed to make these disclosures, DISH intended to induce Canal Uno's reliance by: (a) inducing Canal Uno to continue providing DISH the programming service; (b) inducing Canal Uno to continue to perform under the Affiliation Agreement; (c) inducing Canal Uno to refrain from terminating the Affiliation Agreement for non-payment of License Fees and (d) inducing Canal Uno to believe that the License Fee dispute would be resolved amicably and future License Fees would be forthcoming through the term of the Affiliation Agreement.

117.    On October 15, 2008, DISH completed its scheme and plan by terminating the Affiliation Agreement "effective immediately."   DISH literally notified Canal Uno of the termination by ceasing to broadcast Canal Uno's signal in favor of TeleAmazonas.   This termination letter failed to comply with the termination provisions of the Affiliation Agreement.

118.     At all times, DISH possessed superior knowledge of its true intentions and understood that Canal Uno was acting under a mistaken belief that DISH intended to abide by its promises and commitments.

119.     Canal Uno justifiably, and in good faith, relied upon DISH's misrepresentations and failure to disclose, among other things, and continued to provide DISH the programming services as required by the Affiliation Agreement.

120.     As a direct and proximate result of these misrepresentations and omissions, Canal Uno has suffered damages including, among other things, loss of revenue, loss of profits, loss of goodwill, disruption of business, damage to its relationships with soccer teams, advertisers, soccer enthusiasts, its viewers and others, creation of uncertainty regarding its business and other damages, including exemplary damages, in an amount to be proven at trial.

121.     Litigation and resulting costs, expenses and attorney fees were a foreseeable consequence of the misrepresentations and failures to disclose set forth above.

122.     Accordingly, Canal Uno prays that this Court enter judgment in favor of Canal Uno and against DISH on the claim of fraud and order DISH to pay compensatory damages in the amount proven at trial, prejudgment interest, post judgment interest and exemplary damages.

123.     Canal Uno requests its costs, expenses, attorney fees and such other additional relief as the Court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
**CIVIL CONSPIRACY**
**(Against DISH, Huguet, Media World, and TeleAmazonas)**

124.     Canal Uno realleges and incorporates by reference the allegations contained in Paragraphs 1-123 as if fully set forth herein.

125.     DISH, Huguet, Media World, and TeleAmazonas agreed to a scheme and plan to manufacture an excuse to terminate the Affiliation Agreement between Canal Uno and DISH so that DISH could execute an agreement with TeleAmazonas to replace Canal Uno on the DISHLatino programming package.

126.     DISH, Huguet, Media World, and TeleAmazonas had a meeting of the minds on this scheme.

127.     To accomplish their plan, DISH, Huguet, Media World, and TeleAmazonas participated in unlawful acts, including DISH's wrongful breach of the Affiliation Agreement, DISH's fraud upon Canal Uno, Huguet, Media World, and TeleAmazonas's intentional interference with the Affiliation Agreement, and Huguet and Media World's breach of their fiduciary obligations to Canal Uno.

128.     As a result of this conspiracy, Canal Uno has suffered damages including, among other things, loss of revenue, loss of profits, loss of goodwill, disruption of business, damage to its relationships with soccer teams, advertisers, soccer enthusiasts, its viewers and others, creation of uncertainty regarding its business and other damages, including exemplary damages, in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**INTENTIONAL INTERFERENCE WITH CONTRACT**
**(Against Media World, TeleAmazonas, and Huguet)**

129.     Canal Uno realleges and incorporates by reference the allegations contained in Paragraphs 1-128 as if fully set forth herein.

130.     The Affiliation Agreement between Canal Uno and DISH is a valid, enforceable contract.

22

131.    Media World, TeleAmazonas, and Huguet were aware of the Affiliation Agreement between Canal Uno and DISH.

132.    Media World, TeleAmazonas, and Huguet intentionally and improperly interfered with the Affiliation Agreement by, on information and belief, improperly providing information to DISH regarding Canal Uno's programming that was obtained through Huguet's representation of Canal Uno.  The information provided may have been false and was provided for the purpose of causing DISH to terminate the Affiliation Agreement, an agreement which Huguet had negotiated for Canal Uno.  Huguet, Media World, and TeleAmazonas encouraged DISH not to perform its obligations under the Affiliation Agreement, and encouraged DISH to terminate the Affiliation Agreement and to replace Canal Uno with TeleAmazonas, a competing programmer owned in part by Huguet.

133.    As a result of these Defendants' intentional interference with the Affiliation Agreement, Canal Uno lost its contracts with the Ecuadorian soccer league, the revenue expected from the Affiliation Agreement, and other income.

134.    Canal Uno has suffered damages from Media World's, TeleAmazonas', and Huguet's tortious interference with the Affiliation Agreement, including, but not limited to, its lost licensing fees, the lost value of its contracts with Ecuadorian soccer teams, damage and harm to its reputation, and other damages.

## SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Against Media World and Huguet)

135.    Canal Uno realleges and incorporates by reference the allegations contained in Paragraphs 1-134 as if fully set forth herein.

23

136.   Media World and Huguet exclusively represented Canal Uno in all aspects of negotiation of the Affiliation Agreement as well as in Canal Uno's performance of its obligations under the Agreement.

137.   Additionally, Media World sold Canal Uno infomercials that it told Canal Uno were acceptable for it to broadcast under the Affiliation Agreement.  Specifically, Huguet and Media World advised Canal Uno that the content and timing of each infomercial had been approved by DISH.

138.   Canal Uno had a special relationship of trust, confidence, and reliance with Canal Uno because Media World and Huguet had a high degree of control over Canal Uno's contract performance, as Media World and Huguet were Canal Uno's primary and exclusive contact with DISH on all matters concerning the Affiliation Agreement.  Canal Uno had placed a high level of trust and confidence in Huguet and Media World to look out for Canal Uno's best interests.

139.   Accordingly, Huguet and Media World had a fiduciary duty to act loyally for Canal Uno's benefit in all matters connected with the Affiliation Agreement.

140.   Rather than act loyally for Canal Uno's benefit, after Canal Uno turned down Huguet's request to purchase an ownership stake in Canal Uno, Huguet and Media World acted contrary to Canal Uno's interests by, on information and belief,  improperly and inaccurately informing DISH that Canal Uno was in breach of the Affiliation Agreement by licensing certain soccer games to Ecuavisa, another Ecuadorian broadcaster.  In addition, on information and belief, Huguet improperly informed DISH that Canal Uno was in breach of the Affiliation Agreement by airing impermissible infomercials.  As further evidence of Huguet's and Media World's breach of fiduciary duty, these were the very infomercials that Media World had sold to

24

Canal Uno and that Media World and Huguet had assured Canal Uno were allowed under the Affiliation Agreement and had been approved by DISH.

141.    By acting contrary to Canal Uno's interests, Huguet and Media World helped to facilitate DISH's fraud and improper termination of the Affiliation Agreement and DISH's replacement of Canal Uno by TeleAmazonas, which is owned, at least in part, by Huguet.

142.    Huguet's and Media World's breach of their fiduciary duties to Canal Uno has caused Canal Uno damages, including, but not limited to, its lost licensing fees, the lost value of its contracts with Ecuadorian soccer teams, damage and harm to its reputation, and other damages.

**WHEREFORE**, Canal Uno prays that this Court:

For the First Claim, enter judgment in favor of Canal Uno on its breach of contract claim, and order DISH to pay Canal Uno compensatory damages in an amount to be proven at trial, consisting of not less than the amount of DISH withheld plus the amount that would have been owed to Canal Uno under the remaining term, prejudgment interest, post judgment interest, costs, expenses, exemplary damages and contractual attorney fees;

For the Second Claim, Canal Uno enter a judgment declaring that Section 1.03(f) of the Affiliation Agreement is unconscionable, unenforceable, is a penalty and violates public policy.

For the Third Claim, enter a judgment in favor of Canal Uno on its Fraud claim, and order DISH to pay compensatory damages in an amount to be proven at trial (consisting of not less than the amount DISH withheld in licensing fees plus the amount of licensing fees that would have been owed through the term of the Affiliation Agreement); prejudgment interest,

25

post judgment interest, costs, expenses and attorney fees.  Canal Uno also prays for exemplary damages.

For the Fourth Claim, enter a judgment in favor of Canal Uno on its Civil Conspiracy claim, and order DISH, Huguet, Media World, and TeleAmazonas to pay compensatory damages in an amount to be proven at trial; prejudgment interest, post-judgment interest, costs, expenses, and attorneys' fees.  Canal Uno also prays for exemplary damages.

For the Fifth Claim, enter a judgment in favor of Canal Uno on its International Interference with Contract claim, and order Huguet, Media World, and TeleAmazonas to pay compensatory damages in an amount to be proven at trial; prejudgment interest, post-judgment interest, costs, expenses, and attorneys' fees.  Canal Uno also prays for exemplary damages.

For the Sixth Claim, enter a judgment in favor of Canal Uno on its Breach of Fiduciary Duty claim against Huguet and Media World and order these parties to pay compensatory damages in an amount to be proven at trial; prejudgment interest, post-judgment interest, costs, expenses, and attorneys' fees.  Canal Uno also prays for exemplary damages.

**CANAL UNO REQUESTS A JURY TRIAL ON ALL APPROPRIATE ISSUES.**

DNVRDOCS 18802v2

Dated this 30th day of April, 2010.

Respectfully submitted,

LATHROP & GAGE LLP

  /s/ Aaron P. Bradford

Aaron P. Bradford, #31115
Thomas Leland, # 35631
Tripp Lake, #32289
Republic Plaza
370 Seventeenth Street, Suite 4650
Denver, Colorado 80202
(720) 931-3200
(720) 931-3201
abradford@lathropgage.com
tleland@lathropgage.com
dlake@lathropgage.com

**Plaintiff's Address:**
Canal Uno TV – Relad – S.A.
Ave Francisco De Orellana
112 and Ave Del Bosque